IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JASON BAEZ
*Plaintiff*,

v.

RICKY DIXON, in his official capacity as Secretary of the Florida Department of Corrections,

*Defendant*.

Case No. 25-CV-00216-MW-MAF

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff Jason Baez moves for summary judgment on his claim that imposition of a cost of incarceration lien against him is preempted by federal law. The undisputed evidence establishes that the lien frustrates the purpose of 42 U.S.C. § 1983 by undermining both its compensatory and deterrent functions. Because no genuine issue of material fact exists and preemption is established as a matter of law, Mr. Baez is entitled to judgment in his favor.

This case challenges the Florida Department of Corrections' (FDC) confiscation of funds that it and other officials acting under color of state law paid Plaintiff Baez to settle his civil rights claims after officers brutally beat him and

1

medical staff denied him necessary medical treatment—conduct that ultimately cost him his right eye. Through a $547,850 cost of incarceration lien that FDC secured against Mr. Baez after settling his 42 U.S.C. § 1983 claims, FDC has seized all his settlement funds and more. FDC's lien directly obstructs § 1983's purpose by recouping the very funds awarded to compensate Mr. Baez for the state's constitutional violations and deter future constitutional violations.

## UNDISPUTED FACTS

The Civil Restitution Act, Fla. Stats. §§ 960.29 *et seq*., permits a state sentencing court, for those convicted of non-capital or non-life felony offenses, to enter a civil restitution lien for "a liquidated damage amount of $50 per day of the convicted offender's sentence . . . based upon the length of the sentence imposed by the court at the time of sentencing." *Id.* at §§ 960.292(2), 960.293(2)(b).

On May 11, 2006, the Pasco County Circuit Court sentenced Plaintiff Baez to thirty years in prison for a non-capital, non-life felony offense. Def.'s Resp. to RFA No. 1, ECF No. 51-1 at 3. Defendant did not seek a cost of incarceration lien against Mr. Baez until nearly twenty years after he was sentenced. Def.'s Resp. to RFA No. 2, ECF No. 51-1 at 3.

In June 2019, while isolated in a psychiatric unit at Santa Rosa Correctional Institution, officers' use of force and medical staff's failure to provide adequate treatment caused Mr. Baez to suffer severe injuries. On December 13, 2019, Plaintiff

2

filed a 42 U.S.C. § 1983 suit, bringing Eighth Amendment claims against former FDC Secretary Mark Inch, four correctional officers, and three medical professionals. Def.'s RFA Resp. No. 3, 51-1 at 4; *Baez v. Inch, et. al.*, No. 20-cv-05591-MCR-ZCB (N.D. Fla. Dec. 13, 2019) ("Complaint"), ECF No. 51-2 at 5-6. The correctional officers were acting in their role as employees of the State of Florida. Def.'s RFA Resp. No. 4, 51-1 at 4. The medical professionals were employed by Centurion of Florida, LLC, a medical provider that had a contract with FDC to provide comprehensive health care and were acting as contractors for the State of Florida. *Id.* Nos. 5-7.

In his complaint, Mr. Baez alleged that while his hands were cuffed and feet shackled, five officers, in a medical room and outside the view of cameras, attacked him, striking him multiple times and hitting him twice in the right eye with a walkie-talkie radio. Complaint, ECF No. 51-2 at 7. He further alleged that a doctor evaluated him that same day but refused to order emergency medical treatment, which ultimately led to the loss of his right eye. Complaint, ECF No. 51-2 at 9-10.

On September 28, 2021, Mr. Baez reached a settlement with the FDC employees for $60,000. Def.'s Resp. to RFA No. 8, ECF No. 51-1 at 6. The Florida Division of Risk Management, a division of the Florida Department of Financial Services, is a Florida State agency. Def.'s Resp. to RFA No. 11, ECF No. 51-1 at 7. It paid the settlement on behalf of the Defendant correctional officers and

3

indemnified the officers. Def.'s Resp. to RFA Nos. 9, 11, ECF No. 51-1 at 6-7; Def.'s Supplemental Resp. to RFA No. 10, ECF No. 51-4 at 3. On February 8, 2022, Mr. Baez's attorneys deposited $40,000 to his trust account. Def's Response to RFA No. 13, ECF No. 51-1 at 7. The parties entered a stipulation of partial dismissal as to the correctional defendants on October 27, 2021. Joint Stipulation, ECF No 51-5.

 The court dismissed the case on August 2, 2022. Order of Dismissal, ECF No. 51-6.

A year and half later, on July 11, 2024, FDC moved in the Pasco County circuit court to impose a civil restitution lien judgment against Mr. Baez. Def.'s Resp. to RFA No. 19, ECF No. 51-1 at 9. Under Fla. Stat. § 960.293(2)(b), Defendant sought liquidated damages in the amount of $50 per day for each day of Mr. Baez's 30-year sentence, totaling $547,850.00. Def.'s Resp. to RFA No. 20, ECF No. 51-1 at 9. The

4

sentencing court entered the order imposing the lien, plus interest,[1] the same day Defendant filed his motion. Def.'s Resp. to RFA No. 21, ECF No. 51-1 at 9; Order Granting Civil Restitution Lien, ECF 51-7.

On July 19, 2024, FDC placed a hold on Mr. Baez's trust account in the amount of the lien, preventing him from spending or receiving any money in his trust account. Def.'s Resp. to RFA No. 23, ECF No. 51-1 at 10. On February 12, 2025, without notice, FDC removed all the money in Mr. Baez's account, leaving him with a negative balance of $227,359.36—the amount left to pay on his cost of incarceration lien. Def.'s Resp. to RFA No. 27, ECF No. 51-1 at 11; Baez Trust Account Statement ("Baez Statement"), ECF No. 51-8 at 8, 10. Defendant will continue to remove any money deposited into Plaintiff's account until the balance of the cost of incarceration lien is satisfied. Def.'s Resp. to RFA No. 31, ECF No. 51-1 at 12. In addition to the remaining lien, as of September 3, 2025, Plaintiff has also accumulated liens for medical co-payments and legal postage totaling almost $90. Baez Statement, ECF No. 51-8 at 10.

Mr. Baez had approximately $200 in his trust account before he received his settlement. *Id* at 1. Other than that, all the funds encumbered by the lien were the

---

[1] Interest accrues on those lines in an amount determined by the Chief Financial Officer quarterly—currently 8.65% annually. Fla. Stat. § 960.16; Fla. Stat. § 55.03; Current Judgment Interest Rates, MYFLORIDACFO.COM, https://www.myfloridacfo.com/division/aa/audits-reports/judgment-interest-rates (last visited September 30, 2025).

5

proceeds of his settlement. *See* Def.'s Resp. to RFA No. 33, ECF No. 51-1 at 13 (admitting that at least some of the funds encumbered by the lien were the proceeds of his *Baez v. Inch* settlement); *see also* Def.'s Resp. to Interrog. No. 2, ECF No. 51-9 at 5 (explaining that FDC did not admit that all of the funds in Plaintiff's trust account were encumbered by the lien because Plaintiff had a balance in his account prior to receipt of the settlement), Baez Statement, ECF No. 51-8 at 1 (showing balance of $191.39 prior to settlement deposit).

FDC distributed the funds taken from Mr. Baez's account—i.e., the proceeds of Plaintiff's settlement—to the State of Florida's General Revenue Fund. Def.'s Resp. to Interrog. No. 3, ECF No. 51-9 at 5.

## **LEGAL STANDARD**

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of identifying portions of the pleadings and discovery that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. In considering a motion for summary judgment, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

# ARGUMENT

The undisputed record shows that the State of Florida seized every dollar of the settlement it and its medical care contractor paid Mr. Baez for their alleged civil rights violations and deposited those funds back into the State's own coffers. Defendant admits it: Plaintiff settled a section 1983 suit alleging constitutional violations against state actors; those settlement proceeds were deposited into his trust account; Defendant imposed a cost-of-incarceration lien and removed all funds from Plaintiff's trust account as payment; the removed funds were the proceeds of Plaintiff's civil rights suit; and Defendant transferred those funds to the State's General Revenue Fund. Def.'s Resp. to RFA Nos. 8, 13-14, 19, 27, 31, 33, ECF No. 51-1 at 6, 7, 9, 11-13; Def.'s Resp. to Interrog. No. 3, ECF No. 51-9 at 5.

Defendant's conduct nullifies the remedy created by section 1983 and is therefore preempted. U.S. Const. art. VI, cl. 2. The United States Court of Appeals for the Eighth Circuit has already declared this very conduct unconstitutional. *Hankins v. Finnel*, 964 F.2d 853 (8th Cir. 1992). Because there is no genuine dispute of material fact and Plaintiff should prevail on the pure question of law at issue,[2] Plaintiff is entitled to summary judgment.

    **I.**    **Preemption and Section 1983's Purpose**

---

[2] This Court noted that this case presents a "pure legal question" in its order denying Plaintiff's Motion to Compel. ECF No. 39 at 1.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). When preemption is not express, courts find conflict preemption implied in two circumstances: when compliance with both state and federal law is impossible, or, as here, when the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-73 (internal citation and punctuation omitted). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* at 373.

The purpose of section 1983 is twofold: 1) compensating individuals harmed by constitutional violations by state actors, and 2) deterring those state actors from unconstitutional conduct. *Robertson v. Wegmann*, 436 U.S. 584, 590–91 (1978) ("The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law.").

These two purposes are mutually reinforcing. *See Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 747 (11th Cir. 1989) ("compensation and deterrence are mutually dependent rationales"); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("Deterrence . . . operates through the mechanism of damages that are *compensatory*—damages grounded in determinations of plaintiffs' actual losses.").

## II. FDC's Application of the Lien to Mr. Baez's Settlement Undermines Section 1983's Compensatory Purpose.

By seizing the very funds intended to redress the State's constitutional violation, Florida's cost of incarceration lien against Plaintiff directly obstructs section 1983's compensatory function. *See Hankins*, 964 F.2d at 861 ("To allow the State to largely recoup this award would be inimical to the goals of the federal statute," including to "compensate victims.")

Defendant ensured that Mr. Baez received almost none of the settlement compensation by imposing a cost of incarceration lien. The damages Mr. Baez received as part of his settlement were meant to make him whole—to the extent possible—after the State's actions cost him his eye and other serious injuries. *See Carey v. Piphus*, 435 U.S. 247, 257-58 (1978) (noting that the common law of torts provides the framework for fairly compensating injuries caused by violations of legal rights and offers the "appropriate starting point" for determining damages under section 1983).

Defendant admits that the officers who allegedly beat Plaintiff were working in their role as employees of the State of Florida. Def.'s Resp. to RFA No. 3, ECF No. 51-1 at 4. In fact, "courts so routinely" find that correctional officers act under color of state law "that it is rarely directly discussed in written opinions but is often implicit in the court's holding." *Ford v. May*, No. 3:23CV5086/LAC/ZCB, 2023 WL 8006878, at *3 (N.D. Fla. Oct. 17, 2023). FDC's contracted medical providers who

9

allegedly failed to adequately treat Plaintiff were also acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 55–56 (1988) (holding that it is the function performed, not the employment terms, that determine state action, and that providing medical care to incarcerated individuals is a function delegated by the state); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) ("Where a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present.").

To remedy these state actors' alleged constitutional violations, Plaintiff received a settlement award from the State and the State's contracted medical providers. Defendant's circular arrangement of using a cost of incarceration lien to recoup this settlement obstructs the congressional purpose of § 1983 to compensate civil rights victims and is therefore preempted under the Supremacy Clause.

### III. FDC's Application of the Lien to Mr. Baez's Settlement Undermines Section 1983's Deterrent Purpose.

In addition to undermining the compensatory purpose of section 1983, the undisputed facts establish that imposition of the lien also undercuts its deterrent effect. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). Section 1983's deterrent purpose aims both to redress past abuses and to prevent

future constitutional violations. *Owen v. City of Indep., Mo.*, 445 U.S. 622, 651-52 (1980).

Defendant admits that the State of Florida paid the settlement on behalf of the correctional officers and indemnified those officers. Def.'s Resp. to RFA Nos. 9, 11, ECF No. 51-1 at 6-7; Def.'s Supplemental Resp. to RFA No. 10, ECF No. 51-4 at 3. Recouping the funds Defendant paid out as a result of the unconstitutional conduct of its officers undermines the deterrent effect of paying a settlement award in the first place—the State has no incentive to curb unconstitutional conduct by its employees when it suffers no financial consequences. And by indemnifying its officers and reimbursing itself for settlements, neither the officers nor the State are held to account at all—eliminating deterrence entirely. *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("A judgment for damages in any amount . . . modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.").

Other courts have agreed. In *Hankins,* the state of Missouri initiated proceedings against an incarcerated plaintiff, under a law similar to Florida's, seeking to recoup the proceeds of the plaintiff's civil rights judgment he had obtained against a corrections employee. 964 F.2d. at 854. The Eighth Circuit held that the state's actions of indemnifying officers "who are sued in connection with their official duties" and then recouping damages judgments against those officers

11

through cost of incarceration liens were preempted by section 1983 because they have "the effect of defeating the efforts of any inmate to actually collect his judgment and completely vitiates any deterrent value these judgments possess." *Id.* at 860. *See also Williams v. Marinelli*, 987 F. 3d 188, 201 (2d Cir. 2021) ("The deterrent effect of Williams's § 1983 award is eviscerated if both the constitutional tortfeasor and his employer, the State, are relieved of the bulk of the financial consequences of the violation."). That reasoning applies here with equal force.

Florida courts have likewise expressed concerns about the practice of using a restitution lien as a setoff to avoid consequences for violating inmates' civil rights. *See, e.g., Fla. Dep't of Corr. v. O'Neal*, 398 So. 3d 1100, 1103 n.3 (Fla. 2d DCA 2024) ("If the states can create restitution judgments that protect their employees from such judgments, there does not seem to be an effective method short of criminal prosecution of prison guards to protect the basic human rights of prisoners."); *Green v. State*, 998 So. 2d 1149, 1150-51 (Fla. 2d DCA 2008) (Altenbernd., concurring) ("I am far more troubled, however, by the State's tactic of filing a motion in the criminal court to obtain a civil restitution lien essentially to serve as a setoff against the federal judgment for the violation of the prisoner's civil rights"); s*ee also Smith v. Fla. Dep't of Corr.*, 27 So. 3d 124, 128 (Fla. 1st DCA 2010) (explaining that the purpose of the civil restitution statutes is to "compensate the state for the expenses of incarcerating

12

convicted offender[s]—rather than being used to deter prisoners from making claims against [FDC].").

Here, Defendant's imposition of a lien results in the State reimbursing itself for Mr. Baez's section 1983 settlement. Def.'s Resp. to RFA Nos. 9, 11, 13-14, 19, 20, 27, ECF No. 51-1 at 6-7, 9, 11; Def.'s Resp. to Interrog. No. 3, ECF No. 51-9 at 5. Such an application of the civil restitution lien conflicts with section 1983 because it stands as an obstacle to achieving its dual purposes of compensation and deterrence. As such, FDC's civil restitution lien statute, as applied to Mr. Baez, is preempted by federal law and violates the Supremacy Clause. Because there are no genuine issues of material fact regarding this claim, and the constitutional violation is established as a matter of law, Mr. Baez is entitled to summary judgment.

If the Court grants summary judgment in Plaintiff's favor, Plaintiff respectfully requests leave to submit supplemental briefing on the scope and terms of the injunctive relief necessary to remedy the violation.

## **CONCLUSION**

For the reasons set forth above, this Court should grant Plaintiff's motion for summary judgment in its entirety.

Dated: October 21, 2025                                Respectfully Submitted,

                                                       */s/ Krista Dolan*
                                                       Krista Dolan

13

Florida Bar No. 1012147
Southern Poverty Law Center
P.O. Box 10788
Tallahassee, FL 32302-2788
Telephone: (850) 521-3000
Email: krista.dolan@splcenter.org

Kelly Knapp
Florida Bar No. 1011018
Southern Poverty Law Center
2 S. Biscayne Blvd., Suite 3750
Miami, FL 33131-1804
Telephone: (305) 537-0575
Email: kelly.knapp@splcenter.org

Dante Trevisani
Florida Bar No. 72912
Email: DTrevisani@fji.law
Anne Janet Hernandez Anderson
Florida Bar. No. 18092
Email: ajhernandez@fji.law
Florida Justice Institute, Inc.
40 NW 3rd St., Suite 200
Miami, FL 33128-1839
Telephone: (786) 342-6911

14

## CERTIFICATE OF WORD LIMIT

Under N.D. Fla Local Rule 7.1(F), I hereby certify that this memorandum contains 3,062 words.

*/s/ Krista Dolan*
Counsel for Plaintiff Baez

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on October 21, 2025.

*/s/ Krista Dolan*
Counsel for Plaintiff Baez